UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,              Case Number 17-20135

v.                                          Honorable David M. Lawson

FRANK BALLY,

                Defendant.

_____/

## OPINION AND ORDER DENYING IN PART DEFENDANT'S MOTION TO DISMISS INDICTMENT AND SCHEDULING EVIDENTIARY HEARING

Defendant Frank Bally is charged with violating the federal Controlled Substances Act by growing and distributing marijuana. He contends that he has engaged in that practice under the authority of the Michigan Medical Marijuana Act (MMMA), Mich. Comp. Laws §§ 333.26421, *et seq.* Presently before the Court is Bally's motion to enjoin the prosecution and for other relief. He contends that a rider to an appropriations bill bars the Department of Justice from preventing certain states — including Michigan — "from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542, 129 Stat. 2242, 2332-33 (2015); Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, § 537, 131 Stat. 135, 228 (2016).

Appellate courts that have confronted this argument have acknowledged its validity in varying degrees, without providing much guidance to district courts in how to approach the issue. This Court believes that the first step is to determine whether Bally's conduct in fact complies with Michigan law. Therefore, before finally adjudicating the motion, the parties will appear for a hearing on that question.

I.

The basic facts of the case are straightforward, and mimic several other federal marijuana prosecutions previously brought in Michigan and in other states that have enacted medical marijuana laws.

A.

On July 9, 2015, federal law enforcement agents executed a search warrant on the defendant's home and discovered (1) approximately 276 marijuana plants in four large grow rooms in the basement; (2) clippings, seeds, and processed marijuana; (3) a butane-fired hash oil laboratory; (4) thousands of dollars in U.S. currency; (5) a money counter; (6) a glass sales case with various types of marijuana for sale listed behind the counter and a jar marked "donations"; and (7) handwritten records of the defendant's marijuana distribution. At the time of the search, the defendant admitted to law enforcement officers that he operates a marijuana growing facility in his basement, he distributes the marijuana he grows to others, and he employs other people to assist him in the operation. He also admitted to possessing more marijuana than is permitted under state law.

A grand jury indicted Bally and a co-defendant for conspiracy to distribute marijuana and hashish oil in violation of 21 U.S.C. § 846 (Count 1) and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841 (Count 2).

Bally says that he suffers from severe and chronic back and neck pain, degenerative disc disease of the cervical spine and lumbar spine, sciatica, and post-traumatic stress disorder (PTSD). He states that he tried in vain to treat his symptoms with prescription opioids and other psychotropic drugs, but medical marijuana proved to be the only effective treatment of his conditions. In order to "legally" consume medical marijuana in Michigan, Bally is registered with the Michigan

Department of Community Health as both a patient and a caregiver under the MMMA. He has been a certified medical marijuana user since February 2014 and possesses a registration card.

B.

The MMMA became effective in December 2008 following a citizen-initiated ballot proposal that was approved by Michigan voters. The law did not create a right for all Michigan residents to use marijuana, but it did authorize its medical use by certain qualifying individuals. It also allowed "caregivers" to grow and furnish marijuana to patients. *See People v. Kolanek*, 491 Mich. 382, 393-94, 817 N.W.2d 528, 536-37 (2012).

Using and possessing marijuana remains a crime under Michigan law. But the MMMA establishes two affirmative defenses to such state prosecutions. The first defense, under section 4 of the Act, could more accurately be characterized as an immunity provision. Section 4 states that "[a] qualifying patient who . . . possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner . . . , provided that the qualifying patient possesses an amount of marihuana that does not exceed a combined total of 2.5 ounces of usable marihuana and usable marihuana equivalents, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility." Mich. Comp. Laws § 333.26424(a). A qualified caregiver is allowed to possess those quantities of usable marijuana and plants for up to five registered qualifying patients. Mich. Comp. Laws § 333.26424(b).

The second affirmative defense is found in section 8 of the MMMA. That defense (unlike the section 4 defense) does not depend on the quantity of marijuana possessed. Instead, the accused person, who may be a patient or caregiver, must prove, *first*, that a physician has given an opinion

that the patient "is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition" or its symptoms. Mich. Comp. Laws § 333.26428(a)(1). The opinion must come from a physician who performed a "full assessment" of the patient's history and condition "in the course of a bona fide physician-patient relationship." *Ibid.* The physician's examination and statement must occur "before the commission of the offense." *Kolanek*, 491 Mich. at 408, 817 N.W.2d at 543. *Second*, the amount of marijuana possessed or cultivated "was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms." Mich. Comp. Laws § 333.26428(a)(2). *Third*, the activity — possessing, growing, cultivating, etc. marijuana — must have been directed at "treat[ing] or alleviat[ing] the patient's serious or debilitating medical condition or symptoms." Mich. Comp. Laws § 333.26428(a)(3).

Bally does not claim immunity from state prosecution under section 4. He does argue, however, that his conduct was lawful under Michigan law because he satisfies all the requirements of section 8 of the MMMA.

C.

In 2014, Congress included the following rider in an omnibus appropriations bill:

> None of the funds made available in this Act to the Department of Justice may be used, with respect to the States of . . . Michigan . . . [and 31 other states and the District of Columbia] to prevent such States from implementing their own State laws that authorize the use, distribution, possession, or cultivation of medical marijuana.

Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, § 538, 128 Stat. 2130, 2217. Congress enacted an essentially identical rider in the appropriations acts for the following two fiscal years. *See* Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 542,

129 Stat. 2242, 2332-33 (2015); Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, § 537, 131 Stat. 135, 228 (2016).

Bally argues that the DOJ's expenditure of funds to prosecute him in this case violates Congress's restriction in the appropriations rider and ought to be enjoined. He makes additional arguments that the indictment should be dismissed because marijuana's classification in the Controlled Substances Act violates both the Commerce Clause and the defendant's Equal Protection rights under the Fifth Amendment.

II.

A.

Section 8 of the MMMA does not furnish Bally a defense to this *federal* prosecution. Marijuana is designated as a Schedule I drug by the federal Controlled Substances Act (CSA). 21 U.S.C. § 812(c)(c)(10). Manufacturing and dispensing it is a federal crime. 18 U.S.C. § 841(a), (b)(1)(D). By the terms of the CSA, marijuana is "contraband for *any* purpose," and, "if there is any conflict between federal and state law" on marijuana legislation, "federal law shall prevail" under the authority of the Supremacy Clause. *Gonzales v. Raich*, 545 U.S. 1, 27, 29 (2005). Nothing in Michigan's Medical Marijuana Act can change that.

Bally's request for an injunction, however, is not entirely novel. Several defendants across the country, primarily in the Ninth and Sixth circuits, have attempted to parlay the congressional appropriations prohibitions into prosecution bars when the conduct might be lawful under a state's medical marijuana laws. And last year, in *United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016), the Ninth Circuit addressed "whether criminal defendants may avoid prosecution for various federal marijuana offenses on the basis of [the riders] that prohibit[] the United States Department of Justice

from spending funds to prevent states' implementation of their own medical marijuana laws." *Id.* at 1168. That court held that injunctions might be appropriate in certain cases, if not to enjoin the marijuana law prosecutions themselves, then at least "to enjoin the DOJ from *spending funds* from the relevant appropriations acts on such prosecutions." *Id.* at 1172.

In *McIntosh*, defendants in ten consolidated cases were indicted for violating the CSA and sought dismissal on the grounds that the riders prevented the DOJ from prosecuting them in light of their states' medical marijuana laws. The court began its reasoning with a citation of the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7, noting that "'no money can be paid out of the Treasury unless it has been appropriated by an act of Congress.'" *Id.* at 1174 (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990)). Examining the plain language of the appropriations rider, the court declared that the DOJ is prohibited "from spending money on actions that prevent the Medical Marijuana States' giving practical effect to their state laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *Id.* at 1176. The court noted that even though the DOJ took no legal action against the Medical Marijuana States mentioned in the appropriations riders, by prosecuting individuals who engage in conduct permitted by the states' medical marijuana laws, the DOJ "has prevented the state from giving practical effect to its law providing for non-prosecution of individuals who engage in the permitted conduct." *Id.* at 1177. An injunction prohibiting the DOJ from spending funds for that purpose, the court believed, could be appropriate. However, the court declined to decide "exactly how the district courts should resolve claims that DOJ is spending money . . . in violation an of an appropriations rider . . . tak[ing] no view on the precise relief required and leav[ing] that issue to the district courts in the first instance." *Id.* at 1172 n.2.

Defendants "who had failed to comply fully with state law" were not given much leeway. Instead, the court explained,

> DOJ does not prevent the implementation of rules authorizing conduct when it prosecutes individuals who engage in conduct unauthorized under state medical marijuana laws. Individuals who do not *strictly comply* with all state-law conditions regarding the use, distribution, possession, and cultivation of medical marijuana have engaged in conduct that is unauthorized, and prosecuting such individuals does not violate § 542. Congress could easily have drafted § 542 to prohibit interference with laws that address medical marijuana or those that regulate medical marijuana, but it did not. Instead, it chose to proscribe preventing states from implementing laws that authorize the use, distribution, possession, and cultivation of medical marijuana.

*Id.* at 1178 (emphasis added).

In remanding the cases, the Ninth Circuit noted that "if DOJ wishes to continue these prosecutions, Appellants are entitled to evidentiary hearings to determine whether their conduct was completely authorized by state law, by which we mean that they strictly complied with all relevant conditions imposed by state law." *Id.* at 1179. The court also instructed district courts to "consider the temporal nature of the lack of funds" in fashioning a remedy for any violation of the rider. *Ibid.*

Since *McIntosh*, at least two courts in this district have applied the Ninth Circuit's reasoning in adjudicating defendants' motions for evidentiary hearings and to enjoin the prosecutions. In *United States v. Samp*, No. 16-CR-20263, 2017 WL 1164453 at *1 (E.D. Mich. Mar. 29, 2017), the defendant filed a motion for injunctive relief to enjoin the government from prosecuting him for knowingly possessing a firearm while being an unlawful user of a controlled substance. The court ordered an evidentiary hearing to determine "whether Samp was complying with the Michigan medical marijuana law." *Id.* at *2. After the hearing and further briefing, the court concluded, among other findings, that at the time the government seized marijuana from Samp's home, the defendant possessed 632.31 grams, well in excess over the 425.24 gram limit expressed in the

MMMA. *Id.* at \*6. Apparently applying section 4 of the MMMA, the court found the government showed by a preponderance of the evidence that Samp possessed and personally used marijuana in a way that did not comply with the MMMA, thus foreclosing his request for injunctive relief. *Id.* at \*8.

In *United States v. Ragland*, No. 15-CR-20800, 2017 WL 2728796 at \*1 (E.D. Mich. June 26, 2017), the defendant was charged with four counts related to the manufacture and possession of destructive devices and explosive materials, after law enforcement officers discovered marijuana plants growing in his backyard and "curing" in the basement while investigating an explosion on the defendant's property. *Id.* at \*1. The defendant admitted to regular medical marijuana use and informed the officers that the explosives served to deter others from stealing his plants. *Ibid.* Two of the counts required the use of marijuana as an element of proof, and the defendant argued his use of marijuana was legal under the MMMA, asking the court to enjoin his prosecution as to those two counts. *Ibid.* The court concluded that no hearing was required, because Ragland's conduct was unlawful under federal law regardless of his compliance with the MMMA. *Id.* at \*3 ("Even without the element of marijuana use, the Government alleges that Ragland *still* engaged in illegal conduct: the possession of an unregistered destructive device and creation of a substantial risk of injury through the use of an explosive device."). The court found no basis to entertain the defendant's request to enjoin the prosecution.

Other courts have allowed hearings, however, when the issues focused on the defendant's "strict compliance" with the state's medical marijuana laws. *See United States v. Gentile*, No. 12-CR-00360, 2017 WL 1437532 (E.D. Cal. Apr. 24, 2017) (granting the defendant's request for an evidentiary hearing, placing the burden of proof on the defendant, and finding that defendant failed

to strictly comply with California's Medical Marijuana Laws); *United States v. Daleman*, No. 11-CR-00385, 2017 WL 1256743 at *4 (E.D. Cal. Feb. 17, 2017) (suggesting *McIntosh* requires district courts to grant defendants evidentiary hearings to determine compliance).

The Court believes that an evidentiary hearing is appropriate here. The defendant is charged with growing and distributing marijuana, and he says that his activity was confined to the strictures of the MMMA. If the prosecution is allowed to spend money to secure the defendant's conviction, it conceivably will have violated section 542, which "prohibits DOJ from spending funds from relevant appropriations acts for the prosecution of individuals who engaged in conduct permitted by the State Medical Marijuana Laws and who fully complied with such laws." *McIntosh*, 833 F.3d at 1177

The purpose of the evidentiary hearing, however, is not as the defendant apparently believes. He argues that, under *McIntosh*, he is entitled to an evidentiary hearing to present *prima facie* evidence of each element of his section 8 defense. He also believes that upon showing such *prima facie* evidence, he is entitled to present an affirmative defense to the charges to the factfinder. That is incorrect. The sole purpose of the evidentiary hearing to which the *McIntosh* court referred is for the court to decide whether the DOJ is violating the appropriations rider, thus providing a basis for enjoining the spending of funds. The hearing is not a forum for the defendant to present an affirmative defense to the federal charges brought against him. *See United States v. Daleman*, No. 11-CR-00385, 2017 WL 1256743 at *7, n.6 & 7 (E.D. Cal. Feb. 2, 2017) ("[I]t cannot be said that defendant Daleman is presenting an affirmative defense to the pending federal charges by way of his motion to enjoin . . . defendant's motion does not present an affirmative defense to be presented to and considered by a jury at trial."). That is a distinction with an important difference.

First, establishing a section 8 defense will not absolve the defendant of a federal drug crime. Michigan law cannot upset federal law on the subject. *Raich*, 545 U.S. at 29. Second, the nature of the relief sought shapes the allocation of the burden of proof. In *United States v. Samp*, the court held that the burden of proof was on the government to show Samp was not strictly compliant with the state's medical marijuana laws. 2017 WL 1164453 at *2. The court reasoned that the government always bears the burden of demonstrating guilt of a crime. *Ibid.* (citing *In re Winship*, 397 U.S. 358, 362 (1970)). But the purpose of this hearing is not to determine guilt or innocence; it is to determine whether the defendant is entitled to an injunction barring the use of DOJ funds on this prosecution. As a general rule, "[t]he party seeking a preliminary injunction bears the burden of justifying such relief." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012). There is no reason why that general rule should not apply here. Third, to show entitlement to that injunction, Bally must show that his "conduct was completely authorized by state law, by which [is meant] that [he] *strictly complied* with all relevant conditions imposed by state law." *McIntosh*, 833 F.3d at 1179 (emphasis added). Therefore, Bally must show, at a minimum, that he has satisfied each element of the section 8 defense under the MMMA to account for all of the marijuana that the government contends was illegally manufactured or distributed. The elements of that section 8 defense have been expounded by the Michigan appellate courts, and the Court and the parties will be governed accordingly. *See People v. Kolanek*, 491 Mich. at 408, 817 N.W.2d at 543; *People v. Hartwick*, 498 Mich. 192, 233, 870 N.W.2d 37, 59 (2015).

There are other factors that must be considered when deciding to issue an injunction. *Concerned Pastors for Soc. Action v. Khouri*, 217 F. Supp. 3d 960, 962-63 (E.D. Mich. 2016) (identifying as the relevant factors "whether (1) the moving party has demonstrated a substantial

likelihood of success on the merits; (2) the moving party will suffer irreparable injury without the injunction; (3) the preliminary injunction will cause substantial harm to others; and (4) the public interest will be served if the injunction issues") (citing *Bays v. City of Fairborn*, 668 F.3d 814, 818–19 (6th Cir. 2012)). However, because "the failure to show a likelihood of success on the merits is generally fatal," *ibid.*, the evidentiary hearing will focus on Bally's strict compliance with the MMMA.

B.

The defendant also advances two constitutional challenges to the CSA. First, the defendant not only argues that the CSA exceeds Congress's power under the Commerce Clause, but also urges the Court to question the application of *Gonzalzez v. Raich* in light of the appropriations riders and the Ninth Circuit's opinion in *McIntosh*. The Supreme Court in *Raich* notably held that "the CSA is a valid exercise of federal power" pursuant to the Commerce Clause. 545 U.S. at 9. The Court noted that "[o]ur case law firmly establishes Congress's power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17 (citations omitted). Moreover, the Court explained that it "need not determine whether respondents' activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Id.* at 22. The Court had no trouble finding that "Congress had a rational basis for concluding that leaving home-consumed marijuana outside federal control" would have a "substantial influence on price and market conditions." *Id.* at 19.

Here, the defendant argues such a rational basis no longer exists because state regulation of marijuana has done far more to affect price, market conditions, and the trafficking of marijuana both interstate and internationally. Although not entirely clear from his briefing, it seems the defendant

believes that state regulation of marijuana has lessened home-consumed marijuana's substantial effect on interstate commerce and that Congress, by adopting appropriations riders, intended to place regulation of medical marijuana use beyond the CSA's reach. Although some states have taken on a primary regulatory role, that does not necessarily suggest Congress now lacks a rational basis for concluding home-consumed marijuana use substantially affects price and market conditions. As the Sixth Circuit concluded in *United States v. Marcinkewciz*, 543 F. App'x 513, 516 (6th Cir. 2013), the defendant has "offered no principled way to distinguish *Raich*," and accordingly, his claim is "foreclosed by *Raich*." Moreover, in *United States v. Walsh*, 654 F. App'x 689, 695 (6th Cir. 2016), as in this matter, the defendants contended "[s]ection 538 of the 2015 Appropriations Act changed the legal landscape in which *Raich* was decided." In declining to find that the district court abused its discretion in precluding evidence of compliance with the MMMA, the Sixth Circuit explained that "[alt]hough the legal treatment of marijuana, both medical and recreational, has continued to change in the ten years since [*Raich*] was decided, it remains good law." *Id.* at 696. Therefore, the defendant's constitutional challenge based on the Commerce Clause fails here.

Undaunted, the defendant, in policy-based argument spanning approximately eight pages, also contends this prosecution violates his Equal Protection rights under the Fifth Amendment's Due Process Clause. In *United States v. Taylor*, No. 14-CR-67, 2014 WL 12676320 (W.D. Mich. Sept. 8, 2014), the defendants presented a nearly identical argument, imploring the court to find that there is "no rational reason for continuing to treat marijuana as a controlled substance, or at least as a Schedule I controlled substance." 2014 WL 12676320 at *3. In concluding that the "Defendant's Equal Protection claims are barred by a plethora of settled case law, and that Defendants advance no convincing basis to revisit that case law," the court noted, "[t]o date, every reviewing court has

held that Congress acted rationally in drafting the CSA, placing marijuana on Schedule I, and setting up an agency procedure for scheduling changes." *Ibid*. And as in *Taylor*, this Court "is bound by those cases decided by the Sixth Circuit holding that Congress acted rationally in scheduling marijuana and enacting a regulatory procedure for future scheduling decisions." *Ibid.* (citing *United States v. Burton*, 894 F.2d 188, 192 (6th Cir. 1990); *United States v. Greene*, 892 F.2d 453, 455–56 (6th Cir. 1989)).

Although the adoption of consecutive appropriations riders does suggest that Congress slowly may be modifying its stance on marijuana use, the defendant does not present a "convincing basis to revisit settled case law." *Taylor*, 2014 WL 12676320, at *4. The defendant has not asserted a plausible constitutional challenge to the CSA. His request to dismiss the indictment will be rejected.

III.

The defendant has not shown that the federal CSA is unconstitutional as applied to his present prosecution. It is appropriate, however, to hold an evidentiary hearing on the question whether the DOJ should be enjoined from expending funds on the present prosecution.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the indictment [dkt. #53] is **DENIED IN PART**.

It is further **ORDERED** that the motion hearing otherwise is **CONTINUED** to **January 3, 2018 at 9:00 a.m.**, at which time the defendant will be permitted to present evidence to show that he strictly complied with the Michigan Marijuana Act with respect to the controlled substances that form the basis of the indictment.

It is further **ORDERED** that **by December 8, 2017**, the parties must furnish to the Court lists identifying the witnesses to be called, together with an estimated time for the direct examination of each. The parties also must furnish exhibits lists in a form prescribed by the Court in the scheduling order.

                                                 s/David M. Lawson
                                                 DAVID M. LAWSON
                                                 United States District Judge

Dated: November 22, 2017

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 22, 2017.

                               s/Susan Pinkowski
                               SUSAN PINKOWSKI